AO 106 (Rev. 04/10)  Application for a Search Warrant

**FILED**
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

APR 1 4 2023

MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>IN THE MATTER OF THE SEARCH OF AN APPLE<br>IPHONE (IMEI 355541825974466) LOCATED AT THE<br>FBI OFFICE IN ALBUQUERQUE, NEW MEXICO | ) ) ) ) ) )  Case No.  23MR801 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See attachment A.

located in the _____ District of **New Mexico** _____, there is now concealed *(identify the person or describe the property to be seized):*
See attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §922(g) | Possession of a firearm or ammunition by a felon |

The application is based on these facts:
See attachment C.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Armida Maria Macmanus, FBI Special Agent
*Printed name and title*

Sworn to before me ~~and signed in my presence.~~  via telephone.

Date: 4/4/2023

*Judge's signature*

Barbara S. Evans
~~Gregory B. Wormuth, U.S. Magistrate Judge~~
*Printed name and title*

City and state:  Las Cruces, New Mexico

## ATTACHMENT A

The property to be searched is a black Apple iPhone (IMEI 355541825974466)

hereinafter, the "Device." The Device is currently located at the Federal Bureau of Investigation

office in Albuquerque, New Mexico.

This warrant authorizes the forensic examination of the Device for the purpose of

identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records relating to violations of possession of a firearm and/or ammunition in violation of 18 U.S.C. § 922(g), including:

     a.  evidence of who used, owned, or controlled the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

     b.  evidence indicating how and when the Device was accessed or used to determine the chronological context of the Device access, use, and events relating to crime under investigation and to the user of the Device;

     c.  evidence indicating the user's state of mind as it relates to the crime under investigation;

     d.  evidence of the attachment to the Device of other storage devices or similar containers for electronic evidence;

     e.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device;

     f.  evidence of the times the Device was used;

     g.  passwords, encryption keys, and other access devices that may be necessary to access the Device;

     h.  documentation and manuals that may be necessary to access the Device or to conduct a forensic examination of the Device;

     i.  records of or information about Internet Protocol addresses used by the Device;

j.  records of or information about the Device Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered any Internet search engine, and records of user-typed web addresses;

k.  contextual information necessary to understand the evidence described in this attachment.

l.  Phone numbers, names, usernames, email addresses, residential addresses, and other identifying information of customers, distributors, sources of supply, and other associates of the user of the Device;

m.  Audio and video calls made to or from the Device, along with the duration and date and time each such communication occurred;

n.  Any message logs or messages, whether sent from, to, or drafted on the Device, along with the date and time each such communication occurred;

o.  The content of voice mail messages and audio and video messages stored on the Device, along with the date and time each such communication occurred;

p.  Photographs or video recordings;

q.  Information relating to the schedule, whereabouts, or travel of the user of the Device;

r.  Information relating to other methods of communications, including the contents of those communications, utilized by the user of the Device;

s.  Bank records, checks, credit card bills, account information and other financial records; and

t.  Evidence of user attribution showing who used or owned the Device, such as social media accounts, email addresses, messages, location information,

2

photographs and videos, phonebooks, saved usernames and passwords, documents, and internet browsing history.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI shall deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE (IMEI 355541825974466) LOCATED AT THE FBI OFFICE IN ALBUQUERQUE, NEW MEXICO | Case No.  23MR801 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Armida Maria Macmanus, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation and have been since November 2005. I am currently assigned as a Special Agent for the Albuquerque Division at the Las Cruces Resident Agency in Las Cruces, New Mexico. I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code. My experience as a Special Agent includes but is not limited to: conducting physical surveillance; interviewing witnesses; writing affidavits for and executing search warrants; working with undercover agents and informants; issuing administrative and federal grand jury subpoenas; analyzing financial records, telephone records, and data derived

from the use of pen registers, trap and traces, and assisting in wiretap investigations.  I have participated in this investigation regarding allegations of Christopher Michael Sanchez being a felon in possession of a firearm and/or ammunition in violation of 18 U.S.C. § 922(g).

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a black Apple iPhone (IMEI 355541825974466), hereinafter, the "Device."  The Device is currently located at the Federal Bureau of Investigation office in Albuquerque, New Mexico.

5.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.      The Federal Bureau of Investigation ("FBI"), in Las Cruces, New Mexico (Dona Ana County), is investigating several shootings that took place in Las Cruces from on or about April 10, 2022, to April 17, 2022.  The FBI became aware of the shootings from local law enforcement and the United States Probation and Parole Office.  Christopher Michael Sanchez (herein Sanchez) is believed to have shot a firearm multiple times over several days and wounded at least two people.  Sanchez was under the supervision of the United States Probation and Parole Office at the time of the shootings.

7.      I reviewed an LCPD police report authored by Officer Johnny Estrada and learned the following information: On April 11, 2022, Officer Estrada was dispatched to 2811 North

2

Main Street in Las Cruces (Mountain View Emergency Center at Main), in reference to a vehicle parked there with multiple gunshot holes in it. Once he arrived, Officer Estrada met with a witness (Witness 1) who said that he/she was driving near the Pic Quik Store (which is now a Circle K store) located at Sonoma Ranch Boulevard and Bataan Memorial East when a dark-colored truck pulled up next to his/her car and its occupants began to mouth off to Witness 1 and his/her two passengers. As Witness 1 drove away, he/she heard gunshots, which he/she believed were being shot in the air. Witness 1's passenger (Victim 1), who was riding in the rear passenger-side seat, told Witness 1 he/she had been hit by gunfire. Witness 1 drove Victim 1 to get medical care. However, Victim 1 got upset, refused to receive medical care, and walked away from Witness 1. Officers were able to contact Victim 1 and asked him/her to get medical treatment. Victim 1 refused because, according to him/her, he/she had outstanding warrants. Officer Estrada later learned Victim 1 had been shot in the arm and leg. Officer Estrada contacted a relative of Victim 1, who informed him that the shooter was an individual who goes by the name "Scrappy" and drives a dark Nissan Altima. It is unknown how the relative obtained this information. I also learned that LCPD was able to obtain casings from the shooting.

8.     Victim 1 eventually went to Memorial Medical Center in Las Cruces to receive medical care. LCPD officers were able to interview Victim 1 there on April 11, 2022. I reviewed body camera footage of the interview from LCPD Officer Brian Gardea. From the video, I learned the following information: Three people, including Victim 1, were at the Circle K on April 10, 2022, at approximately 11:40 p.m. The driver (Witness 1), a front passenger, and Victim 1, who sat in the seat behind the passenger, were headed out of the Circle K parking lot when a dark colored vehicle, possibly a black or blue Nissan Altima, pulled up on Victim 1's

3

side. Victim 1 heard Witness 1 ask the suspect vehicle's driver if he wanted to race. Immediately after, Victim 1 heard multiple shots fired from the suspect vehicle. Victim 1 saw two people in the suspect vehicle, the driver and one passenger. Victim 1 said he/she did not recognize them. However, Victim 1 heard the third passenger say that the shooter was "Scrappy," a heavyset male who looked Chinese and had tattoos on his face. Victim 1 did not see the firearms being shot but heard rounds being fired and soon realized he had been shot. Victim 1 told Officer Gardea that Witness 1 did not fire at the suspects.

9.     On or about April 14, 2022, I spoke to an FBI Confidential Human Source (CHS) who told me that on Sunday, April 10, 2022, at approximately 8:00 p.m., Sanchez and his brother, First Name Unknown Last Name Unknown (FNU LNU), pointed two firearms, including a rifle or AR-style firearm, at several people at a gas station on Paisano Drive in El Paso, Texas. Sanchez and FNU LNU drove a dark gray Nissan Altima with tinted windows. The FBI CHS provided telephone number (575) 644-1127 as belonging to Sanchez. The CHS also provided (575) 636-9199 as possibly belonging to Sanchez' brother, FNU LNU.

10.     On or about April 14, 2022, I traveled to the Windstar Gasoline Station located at 311 West Paisano Drive in El Paso, Texas. I met with the store's personnel, who showed me surveillance video dated April 10, 2022, at approximately 8:21 p.m. In the video, I observed a silver-colored vehicle parked at one of the gas pumps and multiple occupants outside the vehicle. I also observed a dark-colored gray sedan pull up to the adjacent gas pump. I observed two subjects exit the sedan. I observed one subject holding his/her arm straight out with what appeared to be a firearm in his/her hand. I also observed a second subject pointing what appeared to be a rifle at the silver vehicle. I then saw both vehicles depart the gas station's parking lot.

4





11.     On or about April 14, 2022, I contacted Jennifer Ramos, Senior U.S. Probation Officer, United States Probation Office, who confirmed that Sanchez was currently on federal supervised release.  Ramos also told me she had been in contact with officers from the LCPD due to allegations that Sanchez had been involved in a shooting in Las Cruces, New Mexico, over the weekend.  Sanchez was previously convicted of the felony offense of Conspiracy to Distribute 50 Grams and More of a Mixture and substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. 841(b)(1)(B).  *See United States v. Christopher Michael Sanchez*, 17-CR-01909 (D.N.M).  Sanchez began his term of federal supervised release on October 4, 2021.

12. .    On or about April 15, 2022, Ramos provided me with Sanchez' primary contact phone number, (575) 644-1127.  On or about April 18, 2022, Ramos told me that Sanchez had provided her phone number (575) 636-9199 on April 1, 2022, as his contact number.

13.     I met with Victim 1 on or about September 29, 2022, at the FBI Las Cruces Resident Agency, 2509 North Telshor Blvd, in Las Cruces, to obtain a voluntary statement. Victim 1 provided additional details regarding the shooting that took place on or about April 10, 2022. Victim 1, Witness 1 and a third passenger, were pulling out of the Circle K when a car pulled up next to them on the roadway.  Witness 1 yelled out to the suspect car if they wanted to race.  Victim 1, who was sitting behind the passenger seat, heard numerous gun shots, and soon realized he/she had been shot.  Victim 1 saw Witness 1 with a firearm but stated that instead of returning fire at the suspect vehicle, Witness 1 was firing the gun into the air.  As the suspect vehicle's occupants continued to fire rounds at Witness 1's vehicle, Witness 1 attempted to flee from the scene.  The suspect vehicle chased Witness 1's vehicle until they were finally able to get away from the suspect vehicle.  Victim 1 told me he did not remember the make and model

6

of the suspect vehicle.  Initially, Victim 1 told me that he did not know who the shooters were.

However, after I showed him several pictures, Victim 1 identified the driver of the suspect

vehicle as "Crispin" (identified by law enforcement as Alfred "AJ" Marquez, who was known to

law enforcement as "Crispy"; Marquez died in Mexico on or about August 19, 2022).  Both the

driver and passenger of the suspect vehicle were shooting at Witness 1's vehicle.  Victim 1

claimed he/she did not recognize who the suspect passenger was.

     14.     On or about Monday April 18, 2022, I received information from LCPD that

Sanchez was identified as a suspect in a shooting at the Kilby Motel, 1045 South Main Street,

Las Cruces, New Mexico, on or about April 17, 2022.  I reviewed an LCPD report authored by

LCPD Sergeant Luis Balderrama and learned the following information: A witness (Witness 2)

told Balderrama that Sanchez, also known as Scrappy, showed up to the Kilby Motel intoxicated.

Sanchez started a fight with a male and pointed a firearm at him and shot one round.  Witness 2

identified Sanchez as the shooter because Sanchez frequented the motel and Witness 2 was

familiar with Sanchez.  Witness 2 told Balderrama that Sanchez drove to the motel in a black

Jeep with black tint.

     15.     I reviewed an LCPD report authored by Officer Montoya and learned the

following information: On or about April 17, 2022, Officer Montoya responded to a shots-fired

call at the Kilby Motel.  Officer Montoya had learned that at an earlier shots-fired call at the

Kilby Motel, the suspect drove a dark SUV and was armed with a handgun.  As Officer Montoya

made his way to the Kilby Motel, he observed a black Dodge Nitro SUV, bearing New Mexico

license plate ANTG45.  Officer Montoya and other responding officers attempted a high-risk

vehicle stop.  The driver of the Dodge Nitro ignored the officers' commands and fled the scene at

a high rate of speed. Two .22 caliber shell casings were later recovered by LCPD at or near the location where the Dodge Nitro was parked at the Kilby Motel.

16.     On or about April 28, 2022, I spoke with LCPD Sergeant Miranda Baker who confirmed Christopher Sanchez is known by the moniker "Scrappy."

17.     On or about September 28, 2022, I received New Mexico vehicle registration records from the FBI Dispatch Center in Albuquerque, New Mexico. The records revealed that New Mexico license plate ANTG45 was registered to Martha Ann and Romen Gabriel Armijo and should be displayed on a Dodge Nitro SUV. An FBI analyst previously told me that Martha Ann Armijo is Sanchez' mother and Romen Gabriel Armijo is Sanchez' brother. Numerous vehicles are also registered to Martha Ann Armijo, including a Nissan Altima, bearing New Mexico license plate NWR246.

18.     On or about September 29, 2022, I received a photo from LCPD Detective Oscar Magallanes depicting a dark colored Nissan Altima bearing license plate NWR246. The Altima was parked at the Park Place Apartments, 3245 East University Avenue, in Las Cruces. The Altima appeared to be the same vehicle, equipped with the same type of tire rims, as the one depicted in the surveillance video from the Windstar Gas Station in El Paso on April 10, 2022.



8

19.     I reviewed an LCPD report authored by LCPD Officer Dalton Kinney which stated that on April 18, 2022, Officer Kinney responded to a dispatch call regarding a disturbance.  On his way there, Officer Kinney found a male (Victim 2) in the street near Valley and Main Street who was yelling and then collapsed.  Officers observed a large amount of blood on the male's shirt and determined he had been shot in the arm and injured in the back of his head. Officer Kinney assisted the male in obtaining medical care. Officers later attempted to obtain a statement from Victim 2.  However, Victim 2 refused to provide any information related to the shooter and refused to press charges.  Prior to responding to this call, Officer Kinney had also responded to a shots-fired call near 1045 Main Street.  The alleged shooter in this incident left the area in a black SUV.  Officers saw the alleged involved SUV, a black Dodge Nitro. However, the vehicle failed to yield to officers.

20.     I reviewed an LCPD report authored by Officer Johnny Estrada which stated that on or about April 18, 2022, Officer Estrada was dispatched to respond to an affray near 225 Desert Rose Court in Las Cruces.  Officer Estrada learned that a caller notified dispatch that they had heard three gunshots.  Officer Estrada observed a trail of blood, which he photographed.  He also located three shell casings located in front of 225 Desert Rose.  Officers received several calls throughout the night from persons who identified the shooter as Christopher Sanchez.

21.     I reviewed an LCPD report authored by Officer Luis Balderrama which stated that Officer Charli Velasco told him that a witness (Witness 3) told him that Chris Sanchez, a.k.a. Scrappy, arrived at his/her apartment and Witness 3 had observed Sanchez with a firearm. Sanchez placed the firearm on Witness 3's bed.  Witness 3 also said Victim 2 might be a friend of Sanchez'.

9

22.     I reviewed an LCPD report authored by Officer Charli Velasco which stated that Officer Velasco spoke with Witness 3 who told him Sanchez said, "the cops were already going after him and he had just run away from the cops."

23.     On or about September 20 and 21, 2022, I interviewed a witness (Witness 3) at the FBI Las Cruces Resident Agency.  During the voluntary interview, I learned the following: Witness 3 told me that on or about April 18, 2022, Sanchez arrived at his/her residence with another unknown male who goes by the name "Bandit."  Sanchez and Bandit arrived at the residence and were breathing heavily, as they had "just ran away from the cops and were in a high-speed chase."  Witness 3 and Sanchez walked inside his/her bedroom and Witness 3 observed Sanchez place a firearm on top of his/her bed.  Witness 3 described the firearm as having a brown wooden handle with a long barrel.  Witness 3 and Sanchez walked into the living room and Sanchez began talking to a female friend of Witness 3.  Witness 3 observed Sanchez attempt to strike his/her female friend with a glass bottle and then punch the female in the face. Witness 3 and the female ran out of the residence and hid nearby.  Witness 3 then heard a scuffle ensue and banging on the walls.  Witness 3 then heard Sanchez yell, "Where's my gun?" and three shots were fired.  Witness 3 called the police.

24.     One or two days after the shooting, Marquez showed up at Witness 3's residence. He asked Witness 3 what he/she said to the police about the shooting and that he was there on behalf of Sanchez.  Marquez referred to himself as Sanchez' "roll dog," a term Witness 3 understood as meaning that Marquez was Sanchez' side kick.  Marquez told Witness 3 that he had been at the Kilby Motel with Sanchez to handle some things and that "Junebug" was beat up. Marquez warned Witness 3 to "watch out" and to be careful, as Sanchez does not "fuck around."

25.     A federal arrest warrant for Sanchez was issued by the Honorable Kevin R. Sweazea, United States Magistrate Judge, on or about April 18, 2022, for violation of his federal probation (*see* ECF Doc. 56, 2:17-CR-01909-MIS).  On April 20, 2022, Sanchez was arrested without incident at the Super 8 motel in Las Cruces, located at 3405 Bataan Memorial West.  At the time of arrest, Sanchez was found in possession of 5.5 grams of Fentanyl (approximately 50 pills) and five Suboxone strips.  An arrest warrant was issued for Sanchez for Possession with Intent to Distribute Fentanyl in the 3rd Judicial District Court of New Mexico on April 20, 2022.  The Device and a tablet were seized by law enforcement from Sanchez at the time of his arrest.

26.     I reviewed a jail call obtained from the Dona Ana County Detention Center (DACDC) placed from an account named "Chris Sanchez" which was made on or about April 21, 2022.  The caller, believed to be Sanchez, instructed Romen, Sanchez' brother, to return to the hotel and see if his cell phone was in there and that he didn't know if "they" searched the room.  Based on my training and experience, I know that criminals use electronic devices such as cell phones, tablets and laptops to communicate with others engaging in criminal activity by placing phone calls either with cellular phone service or using various applications to place phone calls via Wi-Fi connections to the internet.  I also know that drug traffickers use electronic devices to coordinate dates, times and locations to conduct exchanges of drugs for money or other things of value.

27.     During the same call, Sanchez asked Romen to look up "Google" to search the recent shootings in Las Cruces.  Romen told Sanchez that he could not find any recent news regarding shootings in Las Cruces.

28.     I reviewed a jail call obtained from the DACDC placed from an account named "Chris Sanchez" which was made on or about April 21, 2022.  The caller, believed to be

11

Sanchez, spoke with a woman I believe is his mother. The woman tells Sanchez that Romen, her son and Sanchez' brother, told her not to try to get Sanchez's cell phone. The woman said she turned off the service on the phone. Sanchez said that he "has a password on it" and that "they" can't open it even if they wanted to. The woman said that it is probably "the better thing" that they can't get into it and that she thought Apple phones are harder to get into. Based on my training and experience, I know that persons who are engaged in criminal activity attempt to conceal their communications using Apple products due to their perceived security features.

29.     On April 29, 2022, a federal search warrant was issued by U.S. Magistrate Judge Stephan M. Vidmar (case 22-706-MR) in the U.S. District of New Mexico to search the Device and tablet to obtain evidence of drug trafficking and violations of 18 U.S.C. § 922(g). An attempt was made to search both devices. Some records were retrieved from the tablet. A search of the Device was not possible due to the phone's security features.

30.     On or about October 4, 2022, FBI SA Sean Macmanus reviewed Verizon records obtained via a state search warrant (3rd Judicial District of New Mexico, issued by District Court Judge Jessica Streeter on August 12, 2022, and filed on August 24, 2022). FBI SA Sean Macmanus learned that phone number (575) 636-9199 was listed under the same Verizon account subscribed to by Martha Armijo (Sanchez' mother). Under the same account, telephone number (575) 644-1127 was also listed.

31.     On October 19, 2022, a federal search warrant for Verizon records associated with (575) 636-9199 was issued in the U.S. District Court of New Mexico by U.S. Magistrate Judge Gregory J. Fouratt. The search warrant was served on October 21, 2022, and the requested records were received by the FBI on or about October 27, 2022. A preliminary review of those records by FBI SA Sean Macmanus revealed location information from a device assigned (575)

636-9199 was consistent with location information provided by an FBI CHS, witnesses and victims identified in this investigation. The device showed location information in El Paso, Texas on April 10, 2022, in Las Cruces near the Circle K at the time of the shooting on April 10, 2022, and three shootings on or about April 17, 2022, in the areas of the Kilby Motel and the apartments on Desert Rose in Las Cruces. The Verizon phone records revealed IMEI 355541825974466 was assigned to the Device. Additionally, on or about May 2, 2022, SA Sean Macmanus located IMEI 355541825974466 on the Device.

32.     On or about December 20, 2022, I served Apple a federal grand jury subpoena requesting records associated with cellular phone numbers (575) 636-9199 and (575) 644-1127. On January 23, 2023, I received records from Apple which showed telephone numbers (575) 636-9199 and (575) 644-1127 were associated with email accounts chrsan1991@gmail.com and sirsanchez1991@icloud.com.

33.     On January 30, 2023, a federal search warrant for Apple records associated with (575) 636-9199 and (575) 644-1127 was issued in the U.S. District Court of New Mexico by U.S. Magistrate Judge Gregory B. Wormuth. The search warrant was executed on January 31, 2023. Apple, Inc. responded by providing the requested records on or about February 6, 2023. The records revealed the subscriber of the account was Sanchez and the address associated with the Apple account is consistent with an address I know is associated with Sanchez. Additionally, the records also revealed that an iPhone 12, with IMEI 355541825974466 was registered to the account on April 2, 2022. This same iPhone is the Device seized from Sanchez during this arrest on April 20, 2022.

34.     I reviewed several photos and videos located within records provided by Apple, Inc. pursuant to the executed search warrant. I observed a video that was uploaded to Sanchez'

13

iCloud account at least one hour after Victim 1 was shot near the Circle K Store on April 10, 2022. In the video, I observed Sanchez wearing a dark colored shirt with a large white emblem printed on the front. The shirt appears to be the same one worn by the individual depicted in the Windstar gas station video generated on April 10, 2022, in El Paso. In this same video, I observed Sanchez sitting inside a vehicle whose display screen shows a Dodge symbol. More importantly, I observed what appears to be a dark colored firearm with an extended magazine attached to it sitting on Sanchez' lap.



35.                                                                              (Still image obtained from video; yellow circle added to second image by Affiant)

36.      On or about February 14, 2023, I interviewed Witness 1, who was present during the shooting on or about April 10, 2022, near the Circle K Store on Sonoma Ranch Boulevard in Las Cruces. Witness 1 identified Sanchez as the driver of a dark or gray Nissan Altima and

14

observed Sanchez pull out a large black firearm and shoot at Witness 1, another passenger, and Victim 1. Fearing for his life, Witness 1 retrieved his firearm and shot back at Sanchez. SA Macmanus showed Witness 1 a photograph which Witness 1 positively identified as Sanchez.

37.     Although an unsuccessful attempt to extract data from the Device was conducted by law enforcement in approximately May 2022, I know that the forensic tool used to extract data from Apple iPhones has been updated. Therefore, there is a possibility that data could now be extracted from the Device. I also know that the Device seized from Sanchez on April 20, 2022, may have been used to upload the video into Sanchez' Apple iCloud account, which showed Sanchez in possession of a firearm soon after the shooting of Victim 1. In sum and substance, I believe the Device may contain evidence that Sanchez was in possession of a firearm on or about April 10, 2022, in violation of 18 U.S.C. §922(g).

38.     This information, including potential geolocation records stemming from the Device's account activity for the times period specified in Attachment B, is likely to constitute evidence of the crime under investigation that could corroborate or refute claims made by the Victims and/or the Witnesses. The location information from the Device can be analyzed to determine the general area phones were in at certain dates and times. Additionally, the location information could verify that Sanchez traveled interstate.

18.     Based on the foregoing, I believe evidence exists that Sanchez violated 18 U.S.C. § 922(g), as more particularly described in Attachment B, and the evidence may be found on the Device seized from Sanchez at the time of his arrest on or about April 20, 2022.

## TECHNICAL TERMS

19.     Based on my training and experience, I use the following technical terms to convey the following meanings:

15

a. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and speaking to FBI SA Sean Macmanus, who is an expert witness in cell phone analysis and mapping, I know that tablets and smartphones such as Android tablets and Apple iPhones have capabilities that allow them to access the Internet and connect to other devices, such as other computers, storage devices and cell phones. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

16

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices.  This information can sometimes be recovered with forensics tools.

22.     As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data).

23.     The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

24.     This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

25.    There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging

18

files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

26.     *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crime described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times

19

the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20

27.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28.     *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

[See the next page...]

21

## **CONCLUSION**

29.          I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Armida Maria Macmanus, Special Agent
Federal Bureau of Investigation

Sworn telephonically, signed remotely and transmitted via electronic mail on
_____, 2023:

UNITED STATES MAGISTRATE JUDGE

21